Grant T. COGSWELL,
Plaintiff–Appellee,

v.

CITY OF SEATTLE; City of Seattle Ethics and Elections Commission, Defendants–Appellants.

No. 01–36162.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 10, 2003.

Filed Oct. 27, 2003.

---

Sandra L. Cohen, Assistant City Attorney, Gary E. Keese, Assistant City Attorney, Seattle, WA, for defendants-appellants.

William C. Rava, Perkins Coie, Seattle, WA, for plaintiff-appellee.

Before REAVLEY,* TASHIMA, and PAEZ, Circuit Judges.

TASHIMA, Circuit Judge.

The City of Seattle and the City of Seattle Ethics and Elections Commission (together, "Seattle") appeal the district court's grant of summary judgment in favor of plaintiff Grant T. Cogswell ("Cogswell"). Evaluating Seattle Municipal Code 2.14.060(C), which prohibits references to political opponents in candidate statements included in Seattle voters' pamphlets, under the reasonableness standard applied to limited public fora, the district court held that the restriction, although reasonable, was unconstitutionally viewpoint discriminatory. We have jurisdiction over Seattle's timely appeal under 28 U.S.C. § 1291, and we reverse.

## BACKGROUND

### I. The Restriction

The Revised Code of Washington § 29.81A.010 authorizes the publication of a voters' pamphlet in local elections as a "voter education resource." In order to offer a voters' pamphlet, a city must adopt an ordinance governing the publication of the voters' pamphlet, as well as the administrative rules necessary to carry out the

* The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

ordinance.[1] Section 29.81A.030(3) provides that "[a]ny statements by a candidate shall be limited to those about the candidate himself or herself."

Pursuant to state law, the Seattle City Council enacted Seattle Municipal Code ("SMC") 2.14.060 to govern candidates' statements in Seattle voters' pamphlets.[2] Seattle also adopted the Seattle Ethics and Election Commission Voters' Pamphlet Rules to govern the publication of the voters' pamphlet (and a similar Video Voter' Guide). In compliance with Washington law, the ordinance and its accompanying rules provide that "[a] candidate's campaign statement shall not discuss the opponent." SMC 2.14.060(C).

## II. Factual Background

Cogswell has been involved in local and regional transportation issues for many years, and has authored numerous initiatives to improve public transportation in the Seattle area. Largely as a result of his participation and experience in transportation issues and his desire to effectuate positive change in this area, Cogswell registered as a candidate for the Seattle City Council in the 2001 primary elections. Cogswell registered for the seat occupied by Richard McIver, chair of the Council's Transportation Committee, and ran to challenge McIver's record on transportation. McIver ran for reelection based on his record as a City Council member.

On July 30, 2001, Cogswell submitted a candidate statement for inclusion in the voters' pamphlet. Citing the restriction prohibiting candidates from referring to their opponents in statements to be included in the voters' pamphlet and video voters' guide, Seattle rejected Cogswell's candidate statement because it discussed his opponent. The portion of Cogswell's statement discussing his opponent reads:

Sound Transit refuses to consider Monorail even though Seattle voted for it twice. The incumbent, Council member McIver, was originally appointed—not elected—to his seat on the city council in 1996. Since taking office, McIver has served as a key board member and lobbied against grants for Monorail from that agency; voted for legislation that repealed the first Monorail Initiative;

---

1. Local administrative rules must cover certain provisions, such as limits on the length of candidate statements, deadlines for the inclusion of candidate statements in the pamphlet, and appropriate bases for rejection of a candidate statement. Wash. Rev.Code §§ 29.81A.010–.030.

2. SMC 2.14.060 provides:

A. To participate in the election pamphlet, a candidate shall file with the Executive Director (1) a photograph taken within the past two (2) years and (2) a campaign statement. The filing shall be in the form and within the deadlines established by the rules promulgated pursuant to Section 2.14.100. The candidate may also submit an address, phone, e-mail address, and web address for publication in the election pamphlet that the public may use in communicating with the candidate or the candidate's political committee.

B. The photograph shall show the candidate's face, or face, neck and shoulders in the manner of a portrait. It shall exclude other images, such as the candidate's hands, anything held in the candidate's hands, or other people. The candidate shall not wear a uniform or hat or bear an insignia. The background shall be plain. The photograph shall be of a size or quality suitable for reproduction. Informal snapshots, cartoons, caricatures, or images that do not accurately portray the candidate shall be rejected.

C. The candidate's statement shall not exceed four hundred (400) words. No obscene, profane, libelous or defamatory matter, or language, which may impair circulation of the pamphlet through the mail, shall be accepted. A candidate's campaign statement shall not discuss the opponent.

hesitated to stand against the forces on regional committees who want more lanes on SR 520, and is failing to pursue sensible public transportation solutions for the city and the region.

Seattle allowed Cogswell to publish a revised statement in the voters' pamphlet that did not contain discussion of his opponent. Under protest, Cogswell also taped a revised version of his video statement to be included in the video voters' guide.

█ Cogswell filed this action in the district court on August 7, 2001, seeking a preliminary and permanent injunction allowing publication of his candidate statement containing references to his opponent in the voters' pamphlet for the 2001 Seattle local elections. The Seattle local election occurred in November of 2001.[3]

### III. Procedural Background

Cogswell brought suit under 42 U.S.C. § 1983 alleging that Wash. Rev.Code §§ 29.81A.010 and 29.81A.030(3), and SMC 2.14.060(C) unconstitutionally deprived him of his free speech rights under both the First Amendment of the United States Constitution and Article I, section 5, of the Washington Constitution. The action was brought as a facial challenge to Seattle's restriction as a viewpoint biased and unreasonable limitation on Cogswell's free speech rights in a limited public forum.

The district court denied Cogswell's motion for preliminary injunction to compel publication of an uncensored version of his candidate statement, filed with his complaint on August 7, 2001. At oral argu-ment, Cogswell withdrew his challenge to the constitutionality of Wash. Rev.Code §§ 29.81A.010 and 29.81A.030(3), leaving only his challenge to the constitutionality of SMC 2.14.060(C).

On September 19, 2001, the district court granted Cogswell's motion for summary judgement, holding SMC 2.14.060(C) unconstitutional. The district court recognized the reasonableness of the restriction, but nevertheless found SMC 2.14.060(C) viewpoint discriminatory, as it limited the speech of candidates based on their viewpoints as opponents. Seattle timely appealed.

### STANDARD OF REVIEW

"A district court's determinations on questions of law and on mixed questions of law and fact that implicate constitutional rights are [ ] reviewed de novo." *Dittman v. Cal.*, 191 F.3d 1020, 1025 (9th Cir.1999). A district court decision granting summary judgment is also reviewed de novo. *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir.2001) (en banc). We must determine, viewing the evidence in the light most favorable to the nonmoving party, "whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Oliver v. Keller*, 289 F.3d 623, 626 (9th Cir.2002).

█ "In order to prevail on this facial challenge to the [restriction], [Cogswell] must meet a high burden of proof; [he] must 'establish that no set of circum-

---

3. Under *Schaefer v. Townsend*, 215 F.3d 1031, 1033 (9th Cir.2000), this case is not moot because it falls within the "capable of repetition, yet evading review" exception to the mootness doctrine. "Although the election has passed, [Cogswell's] claim is capable of repetition because in the future [Seattle] would deny him, or any other[candidate, the right to discuss an opponent in a candidate statement included in the Seattle voters' pamphlet.]" *Id.* "The short span of time between the filing deadline [for the candidate statement] and the election makes such a challenge evasive of review." *Id.* "When [a] case is 'capable of repetition, yet evading review,' ... the fact that the court cannot give[Cogswell] the full relief he sought will not render the case moot." *Id.*

stances exists under which the [restriction] would be valid. The fact that the [restriction] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid.' " *S.D. Myers, Inc. v. City & County of San Francisco,* 253 F.3d 461, 467 (9th Cir.2001) (quoting *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)).

## ANALYSIS

### I. LAW APPLICABLE TO A LIMITED PUBLIC FORUM

The parties agree that the voters' guide constitutes a limited public forum and we accept the parties' classification of the type of forum involved. *See Kaplan v. County of Los Angeles,* 894 F.2d 1076, 1080 (9th Cir.1990) (holding that California voters' pamphlet constitutes a limited public forum because "California created the pamphlets for the specific purpose of allowing a limited class of speakers, the candidates, to address a particular class of topics, statements concerning the personal background and qualifications of each candidate"). "[A] limited public forum is a subcategory of a designated public forum that 'refer[s] to a type of nonpublic forum that the government has intentionally opened to certain groups or to certain topics.' " *Hopper v. City of Pasco,* 241 F.3d 1067, 1074 (9th Cir.2001) (quoting *DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.,* 196 F.3d 958, 965 (9th Cir.1999)) (alteration in original).

 In limited public fora, a lenient reasonableness standard applies to determine the validity of governmental regulations. *See Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,* 473 U.S. 788, 797, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 46, 103 S.Ct.

948, 74 L.Ed.2d 794 (1983); *Hopper,* 241 F.3d at 1074. Under this reasonableness test, the State can restrict access to a limited public forum as long as (1) the restriction does not discriminate according to the viewpoint of the speaker, and (2) the restriction is reasonable. *Perry,* 460 U.S. at 46, 103 S.Ct. 948. *See also Good News Club v. Milford Cent. Sch.,* 533 U.S. 98, 106–07, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001); *Rosenberger v. Rector & Visitors of the Univ. of Va.,* 515 U.S. 819, 829, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995); *Cornelius,* 473 U.S. at 806, 105 S.Ct. 3439.

### II. THE RESTRICTION IS NOT VIEWPOINT DISCRIMINATORY

"It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger,* 515 U.S. at 828, 115 S.Ct. 2510 (citing *Police Dep't v. Mosley,* 408 U.S. 92, 96, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972)). "The principle that has emerged from [Supreme Court] cases 'is that the First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others.' " *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.,* 508 U.S. 384, 394, 113 S.Ct. 2141, 124 L.Ed.2d 352 (1993) (citing *City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 804, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984)).

Thus, "[d]iscrimination against speech because of its message is presumed to be unconstitutional." *Rosenberger,* 515 U.S. at 828, 115 S.Ct. 2510. "When the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant." *Id.* at 829, 115 S.Ct. 2510 (holding that the University of Virginia's denial of funding to a student newspaper because of its Christian editorial viewpoints where the school funded oth-

er editorial viewpoints was viewpoint discriminatory).

■ In order to preserve the limits of a limited public forum, however, the State may legitimately exclude speech based on subject matter where the subject matter is outside the designated scope of the forum. *Good News Club,* 533 U.S. at 109, 121 S.Ct. 2093; *Rosenberger,* 515 U.S. at 829–30, 115 S.Ct. 2510; *Lamb's Chapel,* 508 U.S. at 394, 113 S.Ct. 2141; *Cornelius,* 473 U.S. at 806, 105 S.Ct. 3439. "The necessities of confining a [limited public] forum to the limited and legitimate purposes for which it was created may justify the State in reserving it for certain groups or for the discussion of certain topics." *Rosenberger,* 515 U.S. at 829, 115 S.Ct. 2510. *See also Perry,* 460 U.S. at 49, 103 S.Ct. 948.

■ The line between an acceptable subject matter limitation and unconstitutional viewpoint discrimination is not a bright one. To determine if a restriction on speech in a limited public forum is viewpoint discriminatory, we apply the guidelines established by the *Lamb's Chapel* line of cases. *See Good News Club,* 533 U.S. at 109, 121 S.Ct. 2093; *Rosenberger,* 515 U.S. at 829–30, 115 S.Ct. 2510; *Lamb's Chapel,* 508 U.S. at 394, 113 S.Ct. 2141. The issue of the restriction's viewpoint neutrality therefore turns on the nature of the forum in relation to the subject matter limitation—if the speech at issue does not fall within an acceptable subject matter otherwise included in the forum, the State may legitimately exclude it from the forum it has created. However, if the speech does fall within an acceptable subject matter otherwise included in the forum, the State may not legitimately exclude it from the forum based on the viewpoint of the speaker.

■ Cogswell argues that the restriction is viewpoint biased because it does not exclude the entire subject matter of a candidate's record, but only excludes speech on a candidate's record from the specific perspective of an opponent. Cogswell supports his viewpoint discrimination argument by comparing Seattle's restriction to the *Lamb's Chapel* cases where the government has excluded religious viewpoints from limited public fora. These cases emphasize that once the government has chosen to permit discussion of certain subject matters, it may not then silence speakers who address those subject matters from a particular perspective. *See Good News Club,* 533 U.S. at 109, 121 S.Ct. 2093; *Rosenberger,* 515 U.S. at 829–30, 115 S.Ct. 2510; *Lamb's Chapel,* 508 U.S. at 394, 113 S.Ct. 2141. Cogswell claims that the restriction here violates that rule because candidates in Seattle are permitted to discuss their "views, historical actions and future plans," but their opponents are prohibited from presenting opposing views on the same subjects. The district court found this argument persuasive. We do not. The restriction acceptably limits the subject matter of the forum to candidate self-discussion. Candidate criticism of an opponent is not included within the subject matter of Seattle's limited public forum. Viewed in this light, Cogswell's submission discussed matters outside the scope of the limited public forum and, therefore, could properly be rejected.

In *Good News Club,* the Supreme Court found a public school's exclusion of a Christian club from meeting on its grounds viewpoint discriminatory because the school permitted non-religious groups "pertaining to the welfare of the community" to meet at the school. 533 U.S. at 107–08, 121 S.Ct. 2093. "Like the church in *Lamb's Chapel,* the [Good News] Club [sought] to address a subject otherwise permitted [in the school's limited public forum], the teaching of morals and character, from a religious standpoint." *Id.* at

109, 121 S.Ct. 2093. As the Good News Club used a religious viewpoint to address the subject matter of the forum, exclusion of the group from the forum simply because of that viewpoint constituted prohibited viewpoint discrimination. *Id.*

In contrast to *Good News Club,* the subject Cogswell wishes to address, his opponent's record, is not otherwise permitted in the limited public forum of Seattle's voters' pamphlet. Seattle has opened the forum to candidates running for office to discuss one topic—themselves. The restriction limits the subject matter allowed in the voter's pamphlet to this topic. In their candidate statements, candidates may discuss themselves, their qualifications and their backgrounds. The subject matter permitted in Seattle's forum is not a free-for-all discussion of every candidate's qualifications, or an opportunity for candidates to engage in mudslinging. Because Seattle has not restricted viewpoints on candidate self-discussion, the subject matter included in the forum, *Good News Club, Rosenberger,* and *Lamb's Chapel* do not invalidate the restriction. Seattle appropriately excluded Cogswell's statement from the voters' pamphlet because he addressed a subject matter outside the limited forum.

Our reading of the restriction is also supported by the enabling statute, the text of SMC 2.14.060, and Seattle's implementation of the restriction. "In evaluating [Cogswell's] facial challenge, we must consider [Seattle's ] authoritative constructions of the ordinance, including its own implementation and interpretation of it." *Forsyth County, Ga. v. Nationalist Movement,* 505 U.S. 123, 131, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992).

Washington law has shaped the limited nature of the forum by requiring that the city establish rules restricting candidates' statements to "statements . . . about the candidate himself or herself." Wash. Rev. Code § 29.81A.030. Based on the Washington governing statute, Seattle's restriction further tailors the limits of the forum to the appropriate subject matter for Seattle's voters' pamphlet.

On its face, the text of the restriction in SMC 2.14.060(C), "a candidate's statement shall not discuss its opponent," also shapes the limited forum of the voters' pamphlet, and confirms that the purpose of the restriction is to provide a forum for candidates to talk about themselves, and not about their opponents.

Regarding the implementation of its restriction, Seattle persuasively argues "the candidate statement limitation Cogswell challenges is, and always has been, a subject matter ground rule of the forum, entirely consistent with the purpose for which the forum was created." Opening Brief of Appellants, June 24, 2002 at p. 25. Indeed, such a ground rule cannot form the basis of a viewpoint discrimination claim absent evidence that the government is intending to "suppress expression merely because public officials oppose the speaker's view." *Perry,* 460 U.S. at 46, 103 S.Ct. 948. There is no evidence that Seattle opposes Cogswell's views on McIver. Instead, the restriction exists as a method of regulating the limited public forum of the voters' pamphlets, and is equally applicable to all candidates. Because the nature of Seattle's forum is limited to candidate's discussions of their own records, submissions that discuss an opponent are not within the scope of the forum and can be excluded. *Good News Club,* 533 U.S. at 109, 121 S.Ct. 2093.

We therefore conclude that the limited forum does not encompass the subject matter at issue—candidates' statements that discuss their opponents. Cogswell's statement is thus not included in the forum's limited subject matter.

## III. THE RESTRICTION IS REASON-ABLE AND DOES NOT VIOLATE THE CONSTITUTION

 In a limited public forum, a restriction on speech violates the First Amendment if it is unreasonable. *Perry,* 460 U.S. at 46, 103 S.Ct. 948. The reasonableness of a governmental restriction limiting access to a nonpublic forum must be assessed "in light of the purpose of the forum and all of the surrounding circumstances." *Cornelius,* 473 U.S. at 789, 105 S.Ct. 3439. The reasonableness analysis emphasizes the consistency of the limitation in the context of the forum's intended purpose. *Di Loreto,* 196 F.3d at 967. The district court correctly determined that the restriction is reasonable in light of the purpose of the forum. Seattle intended the limited public forum of the candidate statement only to *introduce* candidates to the voters and provide brief biographical information, as opposed to providing a forum for extensive campaigning.

Cogswell argues that the restriction is unreasonable because (1) Seattle's enforcement of the restriction does not mesh with the asserted purpose of the forum as Seattle has allowed candidates to discuss everything but their opponents in candidate statements, and (2) the restriction is an "illegitimate" form of governmental censorship on political speech.[4]

 However, the government has substantial leeway in determining the boundaries of limited public fora it creates. The restriction is reasonable for several reasons. First, "[t]he Government's decision to restrict access to a nonpublic forum need only be *reasonable;* it need not be the most reasonable limitation or the only reasonable limitation on speech [in that forum.]" *Cornelius,* 473 U.S. at 808, 105 S.Ct. 3439. Simply because Cogswell or other candidates may feel that there are other more reasonable ways to regulate the voters' pamphlet does not render this restriction unreasonable. Second, there is no requirement that a restriction in a limited public forum be narrowly tailored or the government's interest be compelling for a restriction to be reasonable. *Id.* at 809, 105 S.Ct. 3439. In this limited public forum, Seattle need only justify the restriction "in light of its intended purpose," which it clearly does. Seattle intended its voters' pamphlet to introduce the candidates to the voters, and the restriction helps further this purpose by limiting candidate statements to self-discussion.

Cogswell also argues that the restriction is unreasonable because it is illegitimate governmental censorship of political

---

4. Cogswell also argues that the restriction is unreasonable because it "re-casts a condition" of the restriction as the purpose of the forum, citing *Legal Services Corp. v. Velazquez,* 531 U.S. 533, 547, 121 S.Ct. 1043, 149 L.Ed.2d 63 (2001). In *Legal Services Corp.,* the Court held that if conditions of governmental regulations were recast as purposes of those regulations every time controversy arose, the "First Amendment [would] be reduced to a simple semantic exercise." *Id.* Every indication, however, is that Seattle intended the limited purpose of the forum at the ordinance's inception. State law stipulated that the local voter's guide serve the purpose of a "voter education resource" on the basic biographical information of candidates. Likewise, in their 1999 voters' pamphlet Seattle stated that the pamphlet existed to "assist [voters] in making informed choices for the city positions and propositions that appear on the ... ballot." Seattle did not intend the forum to take the place of the campaigning process, but to augment the candidates' campaigns by providing a brief synopsis of each candidate to the voters. Seattle did not "recast" the purpose of the forum, in light of the controversy here, because it always intended the forum to be a limited method for candidates to discuss themselves when it enacted the restriction.

speech. In *Cornelius,* however, the Supreme Court held that "a non-public forum by definition is not dedicated to general debate or the free exchange of ideas." 473 U.S. at 811, 105 S.Ct. 3439. The existence of alternative channels of communication outside the forum allow political candidates to communicate information restricted by the purposes of the forum, providing other means of contact and communication with the intended audience. *Perry,* 460 U.S. at 53–54, 103 S.Ct. 948. Because limited public fora are a type of non-public forum, *see Hopper,* 241 F.3d at 1074, Seattle is not required to allow the free exchange of ideas in the voters' pamphlet, and can restrict the content of the pamphlet as necessary to meet the purpose for which it created the forum. Cogswell and other candidates have not been unreasonably censored because they have other forums for campaigning where they are able to communicate material limited by the restriction on this forum. *Perry,* 460 U.S. at 53–54, 103 S.Ct. 948.

Because the purpose of the forum is for candidates to discuss themselves, we hold that the restriction is reasonable. There is no requirement that a governmental regulation of a limited public forum be the "most reasonable" or the "only reasonable" limitation on the forum. *Cornelius,* 473 U.S. at 808, 105 S.Ct. 3439. Alternative fora outside the limited public forum of the voters' pamphlet allow Cogswell and other candidates to comment, *ad infinitum,* on the weaknesses of their opponents and other ideas central to political speech. Therefore, viewing the restriction in light of the purpose of the forum and its surrounding circumstances, we conclude that the restriction is reasonable.

## CONCLUSION

The restriction in SMC 2.14.060(C), that a candidate's statement "shall not discuss

the opponent," is not unconstitutionally viewpoint biased because Seattle has legitimately preserved the parameters of its voters' pamphlet by limiting the subject matter included in the forum to candidate self-discussion. The restriction is reasonable because it furthers the purpose for which Seattle created the forum. The judgment of the district court is therefore **REVERSED and REMANDED** with directions to enter judgment in favor of Seattle.