**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
OCTOBER 22, 2020

*Stephens, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
OCTOBER 22, 2020

*Susan L. Carlson*
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| CHRIS REYKDAL, | |
| Respondent, | NO. 98731-9 |
| v. | |
| MAIA ESPINOZA, | EN BANC |
| Appellant, | |
| KIM WYMAN, Secretary of State, | Filed: October 22, 2020 |
| Nominal Defendant. | |

STEPHENS, C.J.—Incumbent Superintendent of Public Instruction Chris Reykdal sued to have the Thurston County Superior Court order the removal of one allegedly defamatory line in the voters' guide pamphlet from challenger Maia Espinoza's candidate statement. The superior court agreed that there was a substantial likelihood Reykdal could succeed in a defamation suit based on Espinoza's statement. Using a supervisory power conferred by RCW

29A.32.090(3)(b), the superior court ordered the secretary of state to edit out the offending line. Espinoza sought accelerated direct review, which this court granted.

Because Reykdal is a public figure, he must show "actual malice" to succeed in a defamation suit. The superior court made no findings regarding actual malice, and thus granted Reykdal's request in error. Because there is no likelihood that Reykdal could succeed in a defamation suit, the superior court erred in its application of the statute.[1]

## FACTS

The legislature passed a law—by request of Reykdal—requiring every public school to provide age-appropriate "comprehensive sexual health education" to each student at all grade levels by the 2022-23 school year. LAWS OF 2020, ch. 188, § 1. The law tasks the superintendent and the Department of Health with making the appropriate learning standards and guidelines available to school districts and teachers on their websites. *Id.* § 1(3). The law also requires that the superintendent develop and publish a list of curricula as a resource for schools, teachers, and other

---

[1] Espinoza also argues that the statute is unconstitutional as applied here because the court's prior restraint of political speech violates free speech principles. But our decision rests on the proper application of the statute, and thus there is no need to consider the constitutionality of the statute at this time. *See Tunstall v. Bergeson*, 141 Wn.2d 201, 210, 5 P.3d 691 (2000) ("Where an issue may be resolved on statutory grounds, the court will avoid deciding the issue on constitutional grounds.").

organizations. *Id.* § 1(4). Schools are encouraged to review the curricula and choose a curriculum from the provided list of resources. *Id*. § 1(6)(a).

Consistent with the law, the superintendent's website provides a list of sexual health education resources. One of the resources listed includes a fourth grade curriculum from Advocates for Youth. *See* RIGHTS, RESPECT, RESPONSIBILITY: *A K-12 Sexuality Education Curriculum*, ADVOCATES FOR YOUTH, https://3rs.org/3rs-curriculum (3Rs Curriculum). This particular curriculum includes a handout for parents and guardians that refers users to additional resources, including the book *It's Perfectly Normal: Changing Bodies, Growing Up, Sex, and Sexual Health*, by Robie H. Harris. The handout referencing the book states, "These resources all provide important, age-appropriate information about puberty and how our bodies change during this time. Please review these before sharing with your child so you feel ready to answer any questions they may have." 3Rs Curriculum, 4th Grade Lesson 1, *Making Sense of Puberty*, at 32; Clerk's Papers (CP) at 96. The book includes various illustrations of sexual health education material, including two pages with depictions of a couple having sexual intercourse in different positions.

Espinoza is one of six candidates who entered the 2020 primary for the superintendent of public instruction position. The secretary of state publishes a voters' guide pamphlet for all elections involving statewide offices. RCW

29A.32.010. Candidates for the superintendent position may submit a candidate statement and photograph for publication in the pamphlet. *Id.* at .031. The statements may not exceed 200 words. *Id.* at .121. The published voters' guide pamphlets include a disclaimer on every page stating that candidate statements are printed as submitted and not edited for factual or grammatical accuracy.

Espinoza submitted a candidate statement that includes the sentence, "*The incumbent ignored parents and educators by championing a policy that teaches sexual positions to 4th graders!*" Candidate Statement of Maia Espinoza, Office of the Secretary of State: 2020 Primary Voters' Guide (Aug. 2020), https://voter.votewa.gov/genericvoterguide.aspx?e=865&c=99#/candidates/57367/70643; *see also* CP at 20. The secretary of state notified Reykdal of Espinoza's candidate statement, and Reykdal filed a petition in Thurston County Superior Court to bar Espinoza and the secretary of state from publishing this sentence pursuant to RCW 29A.32.090.[2] Reykdal included a declaration stating that while he supported the new comprehensive sexual health education law, he had never advocated for the teaching of sexual positions to fourth graders. Espinoza responded, explaining that

---

[2] The secretary of state is only a nominal party in this lawsuit. RCW 29A.32.090(3)(d).

her statement was based on the curriculum handout's reference to two pages in the *It's Perfectly Normal* book.

The court held that the sentence in Espinoza's candidate statement is untrue, in part because of its specificity, and that there is a very substantial likelihood that Reykdal would prevail in a defamation action based on this sentence. The court granted Reykdal's petition and ordered the sentence deleted from all voters' guide pamphlets. Espinoza sought direct expedited review, which this court granted. Because of the deadlines for timely publishing the general election voters' guide pamphlets, the court considered the matter without oral argument and issued an order with this decision to follow.

ANALYSIS

At issue here is the application of RCW 29A.32.090. This law allows a person to petition the court for a judicial determination that a candidate statement "may be rejected for publication or edited to delete the defamatory statement." RCW 29A.32.090(3)(a). The court may edit a candidate statement only when "it concludes that the statement is untrue and that the petitioner has a very substantial likelihood of prevailing in a defamation action." *Id.* at (3)(b).[3] Here, the superior court erred

---

[3] The legislature added this defamation requirement to the statute following this court's decision in *Rickert v. Pub. Disclosure Comm'n*, 161 Wn.2d 843, 168 P.3d 826 (2007). *See* LAWS OF 2009, ch. 222, § 1.

because there is little possibility that a public figure like Reykdal could prevail in a defamation action against Espinoza. Our review of the statutory language is de novo, *Castro v. Stanwood Sch. Dist. No. 401*, 151 Wn.2d 221, 224, 86 P.3d 1166 (2004), and review of the trial court's decision is also de novo as it is the equivalent of a summary judgment. *Troxell v. Rainier Pub. Sch. Dist. No. 307*, 154 Wn.2d 345, 350, 111 P.3d 1173 (2005). In a general defamation claim, the plaintiff must establish (1) falsity, (2) an unprivileged communication, (3) fault, and (4) damages. *Mohr v. Grant*, 153 Wn.2d 812, 822, 108 P.3d 768 (2005) (plurality opinion). Here, Reykdal cannot establish either falsity or damages.

I.   ESPINOZA'S STATEMENT IS NOT DEMONSTRABLY FALSE

There is no substantial likelihood that Reykdal could meet his burden to demonstrate that Espinoza's statement is false. *See Mohr*, 153 Wn.2d at 822-23. Reykdal argues that it is ridiculous to suggest he would support teaching sexual positions to fourth graders and that the handout is not specifically listed as part of the teaching curriculum. Neither argument is availing.

Reykdal's first argument is flawed because he mistakenly assumes the word "teaches" in the candidate statement means that some form of classroom instruction by a school teacher is required for the statement to be true. Instead, the handout encourages parents and guardians to review the materials before sharing them with

children to be ready to answer any questions their children may have. Thus, the handout clearly implies that the parent or guardian reviewing the material should share it with children after appropriate preparation. This indicates that the 3Rs Curriculum intends that fourth graders view and learn from the *It's Perfectly Normal* book with their parents or guardians as a supplement to classroom instruction. Indeed, the handout encourages it. And while the record does not show that Reykdal personally intended to teach sexual positions to fourth graders, Espinoza's candidate statement criticized Reykdal's policy and its results, not his personal teaching.

Reykdal's argument that the handout is not part of the curriculum is also flawed. While it is true that the handout's book reference is not specifically listed in the curriculum, this does not break the logical chain of Espinoza's statement: the policy requires the superintendent to recommend curricula, the 3Rs Curriculum includes the informative handout, the handout encourages parents and guardians to read and share the book with their children, and the book includes depictions of a couple having intercourse in two different positions. It is unlikely but truthful that the policy could result in unintentionally exposing fourth graders to depictions of, and thus "teaching" them, different sexual positions.

Defamation can also occur by implication when "the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a

*Reykdal v. Espinoza*, 98731-9

defamatory implication by omitting facts." PROSSER AND KEETON ON THE LAW OF TORTS § 116, at 117 (W. Page Keeton ed., 5th ed. 1984) (footnote omitted). But Reykdal does not argue the defamation allegedly caused by Espinoza's statement is merely implied—to the contrary, he argues the statement is so obviously defamatory that it rises to the level of defamation per se. Accordingly, we express no opinion as to whether Espinoza's statement carried a defamatory implication.

Because the reference materials included in the 3Rs Curriculum provided on the superintendent's website could inform fourth graders of different sexual positions, Reykdal has failed to meet his threshold burden of proving Espinoza's statement is false.

## II. REYKDAL HAS NOT DEMONSTRATED THE ACTUAL MALICE REQUIRED TO SUCCEED IN A DEFAMATION ACTION

Reykdal's invocation of RCW 29A.32.090 also fails because he is a public official and therefore less likely to prevail in any defamation action. The First Amendment to the United States Constitution is more protective of speech criticizing public officials because such speech is essential to citizens' ability to thoughtfully engage in public debate and the democratic process. The public good that arises from sharp criticism and examination of public officials' records requires laws and policies that will not chill such speech. Accordingly, to succeed in any defamation

action, a public official must establish something the average defamation plaintiff need not establish: "actual malice." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964). As a public official, Reykdal may not recover damages "for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* A "reckless disregard" means either that there was a high degree of awareness of probable falsity or that the defendant in fact entertained serious doubts about the truth of the statement. *Herron v. KING Broad. Co.*, 109 Wn.2d 514, 523, 746 P.2d 295 (1987), *adhered to on reh'g*, 112 Wn.2d 762, 776 P.2d 98 (1989).

The standard of proof for such a defamation claim is also higher in cases involving a public official. To succeed, Reykdal must show "clear and convincing evidence" that Espinoza made the statement with actual malice. *Duc Tan v. Le*, 177 Wn.2d 649, 300 P.3d 356 (2013). The more lenient "preponderance of the evidence" standard from most civil tort litigation does not apply. *Id.*

Here, the superior court made no findings of actual malice. And there is nothing in the record to suggest that Espinoza made her statement knowing it was false or with a "reckless disregard" of its veracity. As discussed above, the statement is not demonstrably false, and Espinoza could have reasonably relied on the logical

chain of events arising from the policy leading to children viewing the *It's Perfectly Normal* book and learning about sexual positions. Whether Espinoza's critique is fair—and whether Reykdal's policy is sound—is for the voters to decide. Espinoza's statement is inflammatory, but it does not defame Reykdal under the *New York Times* standard.

It is of no help to Reykdal that the statute contains a reference to defamation per se. RCW 29A.32.090(2) (the statement is "'libel or defamation per se' if [it] tends to expose the candidate to hatred, contempt, ridicule, or obloquy, or to deprive him or her of the benefit of public confidence or social intercourse, or to injure him or her in his or her business or occupation"). This language arises from defamation law concerning the proof of damages.

Generally, a plaintiff must prove and may recover only the "actual damages" caused by defamation. *Haueter v. Cowles Publ'g Co.*, 61 Wn. App. 572, 578, 811 P.2d 231 (1991). But when the communication is "defamatory per se," there is no requirement to prove "actual damages." *Id*. Nothing in this "per se" exception to the general rule, however, affects the applicability of the *New York Times* standard requiring public officials to prove actual malice. That standard is grounded in First Amendment principles that do not evaporate simply because the speech subjects the public official to particularly heinous ridicule. Indeed, presumptive damages for the

alleged defamation of public officials is specifically barred by *New York Times*. 376 U.S. at 283-84 ("Such a presumption is inconsistent with the federal rule."). Reykdal does not—and indeed cannot—meet his burden to show actual malice (which is an element not present in normal defamation cases) by proving defamation per se (which satisfies the damages element in normal defamation cases). Reykdal has therefore not shown he is likely to succeed in a defamation suit as required by RCW 29A.32.090.

## CONCLUSION

Because Reykdal is a public official, he cannot succeed in a defamation action without proving actual malice. The superior court did not find actual malice, and this record does not support such a finding. Accordingly, the superior court order barring publication of Espinoza's statement is reversed. The secretary of state shall publish Espinoza's original statement in the voters' guide pamphlet.

_____
Stephens, C.J.

WE CONCUR:

_____
Johnson, J.

_____
Gordon McCloud, J.

_____
Madsen, J.

_____

_____
Owens, J.

_____

_____
Whitener, J.

*Reykdal v. Espinoza,* No. 98731-9 (González, J., dissenting)

No. 98731-9

GONZÁLEZ, J. (dissenting) — A government of the people depends on regular, free, and fair elections. To be fair, voters must have access to truthful information about the candidates for office. In Washington State, every household and every public library receives a voters' pamphlet that contains the candidates' own statements about why a voter should trust them with a vote. RCW 29A.32.010, .031. The voters' pamphlet is a state-funded, limited public forum and the people, through their legislature, have the power to impose reasonable, viewpoint neutral rules on the candidates' statements. *See Cogswell v. City of Seattle*, 347 F.3d 809, 814 (9th Cir. 2003). The people of our state have imposed the modest requirement that candidates not use the voters' pamphlet as a vehicle to make false or misleading statements about their opponents. RCW 29A.32.090(2).

To protect the free speech rights of candidates, the law imposes a heavy burden on anyone seeking to remove language from the voters' pamphlet. RCW

1

29A.32.090. Relevantly, a court must "conclude[] that the statement is untrue and that the petitioner has a very substantial likelihood of prevailing in a defamation action." RCW 29A.32.090(3)(b). In this case, Superintendent Chris Reykdal has challenged his opponent's assertion that he "*ignored parents and educators by championing a policy that teaches sexual positions to 4th graders!*" Clerk's Papers (CP) at 20. Because I agree with the trial judge that Reykdal has made the requisite showing, I respectfully dissent.

I offer some background for context. Since 2008, Washington State has required that public schools providing sexual health education ensure that the information is medically and scientifically accurate and age appropriate. LAWS OF 2007, ch. 265, § 2, *codified as* RCW 28A.300.475. Recently, the legislature heard testimony that only a little more than half of the state's school districts were providing comprehensive sexual health education. Hr'g on Engrossed Substitute S.B. 5395 Before the H. Education Comm., 66th Leg., Reg. Sess. (Wash. Feb. 20, 2020), *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org/watch/?eventID=2020021250. This year, the legislature passed an update to RCW 28A.300.475, Engrossed Substitute Senate Bill 5395 (ESSB 5395), at the request of the Office of the Superintendent of Public

Instruction (OSPI). *See* LAWS OF 2020, ch. 188; CP at 28-33.[1]  Under ESSB 5395,

schools would be required to offer medically and scientifically accurate, age

appropriate sexual health education that includes material on affirmative consent

and bystander training.  ESSB 5395, § 1, *codified at* RCW 28A.300.475(1).  OSPI

is tasked with developing "a list of sexual health education curricula that are

consistent with the 2005 guidelines for sexual health information and disease

prevention."  RCW 28A.300.475(4).  This list is intended to be a resource for local

school districts and teachers.  *Id.*  OSPI makes it clear that it does not, however,

approve or recommend curricula or instructional materials and that school districts

are encouraged to do their own independent review.  "Inclusion of a title in a

review does not constitute 'approval' for district use."  CP at 136.  School districts

are not limited to the curricula on the list.  RCW 28A.300.475(5).

One of the curricula that OSPI found consistent with the 2005 guidelines is

called "Rights, Respect, Responsibility: A K-12 Sexuality Education Curriculum."

CP at 91-100.  This curriculum was created by the organization Advocates for

Youth, an outside organization not associated with OSPI.  Nine other curricula

were found consistent with the guidelines for grades 4-5.  As part of its packet of

materials in a lesson for fourth graders, the curriculum includes a handout designed

---

[1] The bill has not gone into effect because a referendum has been filed and will be before the voters this November. https://www.sos.wa.gov/elections/initiatives/referendum.aspx?y=2020.

3

for parents and other caregivers.  The supplemental handout for parents references a book titled *It's Perfectly Normal*.  CP at 51-52.  The book contains cartoon images of couples engaged in intercourse.  This book is not part of the teaching curriculum, and this record is bereft of any hint OSPI is recommending teachers use it to teach.  This is the basis for Maia Espinoza's claim that Reykdal is "*championing a policy that teaches sexual positions to 4th graders!*"  CP at 20.

Espinoza herself acknowledges that this is a "trail of bread crumbs" that led her to conclude Reykdal champions teaching sexual positions to fourth graders.  CP at 43.  It is also simply not a reasonable or even plausible interpretation of the facts.  The fact that an outside organization reviewed this book, found that it was age appropriate, and recommended it to parents as one of many resources that they might find helpful in talking to their own children about puberty simply does not amount to Reykdal championing teaching sexual positions to fourth graders.  The trail of bread crumbs is just too faint.  Accordingly, I respectfully disagree with the majority that the trial court erred in finding the statement was false.

Because Reykdal is a public official, he must also show that there is actual malice or that the defendant knows the statement was false or "[was made] with reckless disregard of whether it was false or not."  *Duc Tan v. Le*, 177 Wn.2d 649, 681, 300 P.3d 356 (2013) (Johnson, J., dissenting) (alteration in original) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280, 84 S. Ct. 710, 11 L. Ed. 2d 686

4

*Reykdal v. Espinoza,* No. 98731-9 (González, J., dissenting)

(1964)). I recognize that the trial judge's two page order does not make a specific finding of malice. Nor does it make a finding of an unprivileged communication or fault which are also elements of a defamation claim. *See Mohr v. Grant*, 153 Wn.2d 812, 822, 108 P.3d 768 (2005) (plurality opinion); *see also N.Y. Times*, 376 U.S. at 279-80. Such findings are necessarily subsumed in its conclusion that Reykdal has met his burden.

In my view, Reykdal has met this burden by showing that the "allegations are so inherently improbable that actual malice may be inferred from the act of putting such extreme statements in circulation." *Duc Tan*, 177 Wn.2d at 669 (citing *Margoles v. Hubbart*, 111 Wn.2d 195, 201, 760 P.2d 324 (1988)). The allegation that a public official would champion a policy teaching sexual positions to fourth graders, based on a faint trail of bread crumbs reaches the level of improbability to establish actual malice.

Reykdal is not required to show actual damages under the statute because the statement is defamatory per se under RCW 29A.32.090(2). The statute provides that

> a false or misleading statement shall be considered "libel or defamation per se" if the statement tends to expose the candidate to hatred, contempt, ridicule, or obloquy, or to deprive him or her of the benefit of public confidence or social intercourse, or to injure him or her in his or her business occupation.

RCW 29A.32.090(2). Comments on the *Seattle Times* article contained in the record demonstrate that Espinoza's statement has already deprived him of at least some of the public's confidence. This is sufficient to meet the standard set forth in RCW 29A.32.090(2). I respectfully disagree with the majority that Reykdal has not met his statutory burden.

I also find no constitutional infirmity in this statute. First, I would join those courts that have held voters' pamphlets are limited public forums. *See Cogswell*, 347 F.3d at 814 (citing *Kaplan v. County of Los Angeles*, 894 F.2d 1076, 1080 (9th Cir. 1990)). Only by the intentional action of "opening a nontraditional forum for public discourse" can a government entity create a designated forum, not by "inaction or by permitting limited discourse." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 802, 105 S. Ct. 3439, 87 L. Ed. 2d 567 (1985). The State has not taken any intentional action to create a public forum via the voters' pamphlet and, in fact, has set limitations on what speech may be included.

Since the voters' pamphlet is a limited public forum, the government may establish "any reasonable restriction to ensure that the forum will be reserved for its intended purpose." *Sprague v. Spokane Valley Fire Dep't*, 189 Wn.2d 858, 879, 409 P.3d 160 (2018) (citing *City of Seattle v. Mighty Movers, Inc.*, 152 Wn.2d 343, 361, 96 P.3d 979 (2004)). The restrictions "must only be viewpoint neutral and 'reasonable in light of the purposes served by the forum.'" *City of Lakewood v.*

6

*Reykdal v. Espinoza,* No. 98731-9 (González, J., dissenting)

*Willis*, 186 Wn.2d 210, 217-18, 375 P.3d 1056 (2016) (plurality opinion) (internal quotation marks omitted) (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829, 115 S. Ct. 2510, 132 L. Ed. 2d 700 (1995)). The restriction on false and defamatory speech gives candidates the opportunity to introduce themselves to voters while creating a mechanism to avoid exposing the secretary of state to legal liability for publishing actionable defamation. *See Cogswell*, 347 F.3d at 811; RCW 29A.32.090(3)(d). The restriction applies equally to all candidates whose statements are challenged as false and defamatory under the statute, and is therefore viewpoint neutral. *See Cogswell*, 347 F.3d at 816 (holding that restrictions on candidate statements in the voters' pamphlet are viewpoint neutral because they are "equally applicable to all candidates"). Because the restrictions are reasonable and viewpoint neutral, it does not constitute an unconstitutional infringement on speech.

The voters' pamphlet provides a vital, government-sponsored service: a neutral source for voter information. The citizens of Washington have expressed a strong public interest in not allowing the voters' pamphlet be a forum for false or misleading statements about a candidate's opponent. *See* RCW 29A.32.090(2). Espinoza's statement was false and misleading, and Reykdal met the heavy burden established by the statute to have that statement removed.

I respectfully dissent.

7

_____
Gonzalez, J.

Yu, J.

Montoya-Lewis, J.