IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| STEPHEN JOHN BOBICK, | No. 86646-0-I |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| MELISSA FERNANDES, | |
| Appellant. | |

CHUNG, J. — Melissa Fernandes appeals an antiharassment protection order restraining Fernandes and protecting Stephen Bobick. Fernandes argues that the trial court erred by determining that her underlying conduct was not protected speech and met the definition of harassment. We affirm.

FACTS

In December 2023, Bobick petitioned for an antiharassment protection order protecting him from Fernandes. Bobick alleged that Fernandes, whom Bobick did not know personally, had been making false claims online that Bobick sexually assaulted a woman named R.H. in 2015. He also alleged that Fernandes had been "harassing [him] online for more than one year." Bobick specifically described two recent incidents. First, on November 27, 2023, Fernandes published a petition on the Change.org website targeting the Mountaineers, a Seattle-based climbing organization. According to Bobick, the petition demanded that the Mountaineers "change their policies in vetting

volunteers and how they handle behavior complaints." Bobick provided a screenshot with text from the petition, which included the following statement: "Documents from a former member of the Mountaineers reported two sexual assaults in 2016. Stephen Bobick was accused of touching a woman inappropriately as she slept in a tent on a Mountaineers Climb." Second, Bobick alleged that Fernandes and R.H. collaborated on two public events to show a video that included a photograph of Bobick and R.H. with the caption, "Was sexually assaulted twice . . . by leaders in The Mountaineers I trusted." According to Bobick, Fernandes "rang a bell and yelled 'shame' repeatedly as the image . . . was on screen" and later published the video online.

Bobick's petition came before a superior court commissioner for a hearing on January 25, 2024. After addressing preliminary matters, the commissioner admitted and reviewed three video exhibits that Bobick offered into evidence. The commissioner then swore in both Bobick and Fernandes and asked Bobick whether the allegations in his petition were true. Bobick responded "yes" and then testified, among other things, that

> [Fernandes] has repeatedly made posts on social media accusing me of sexual assault and associating with other folks that she's accusing of sexual assault. I have never been subject to an investigation for sexual assault. There was no criminal record. She nevertheless has repeatedly made those accusations and published them on forums where there are hundreds of thousands of people.
> Fernandes, for her part, denied that she had unlawfully harassed Bobick.

She testified that she was a "credentialed advocate" and had a lawful purpose for the Change.org petition, i.e., "to persuade the Mountaineers to adhere to their own policies in which they advertise . . . themselves within a program that

2

dedicates its time to anti harassment." When the commissioner asked Fernandes why she was posting about Bobick, Fernandes responded, "I run a community for survivors" and was posting about Bobick "[t]o let the community know that he is a perpetrator. He's been alleged to perpetrate abuse in the community." Later, the commissioner observed that Fernandes was "out there on multiple social media platforms alleging things about [Bobick] that have not been substantiated in any court of law." Fernandes responded that she did so "[i]n the context of [Bobick] trying to get a protection order against [R.H.]," which Fernandes speculated was in retaliation for R.H.'s saying that Bobick had sexually assaulted her. Fernandes later added that Bobick was "welcome to plead his case to me and say that that didn't happen."

After hearing from Bobick and Fernandes, the commissioner recessed and reviewed the video exhibits that were admitted into evidence. The commissioner then noted that this was "an extremely close case" and ruled that although he was "troubled by this case for a variety of reasons," he did not find that what Bobick had experienced was unlawful harassment. The commissioner thus denied Bobick's petition.

Bobick moved to revise the commissioner's ruling, and on March 11, 2024, a superior court judge granted revision. In its written order, the revision court made specific findings as to each of the statutory elements of harassment. The court found that "Fernandes agreed with . . . Bobick's description of her accusations of sexual assault against him, activities, and the relevant time frame" and that it was "clear . . . Fernandes wants to make her accusations of sexual

assault against . . . Bobick to the public as a warning to other people who may have any type of social relationship with [him] now or in the future." The revision court ultimately determined that "[b]ased on a preponderance of the evidence . . . Bobick has offered sufficient evidence to support his request for a protection order." It then observed that "constitutionally protected free speech is exempt from the unlawful harassment statute," but "[n]ot all speech is constitutionally protected free speech." And because it "[wa]s unclear from th[e] record if . . . Fernandes argued her course of conduct [wa]s protected free speech exempt from the unlawful harassment statute, or . . . argued the civil protection order statute . . . is unconstitutional," the revision court remanded to the commissioner to "determine if the activities of . . . Fernandes are protected free speech," authorizing the commissioner to "hold another contested hearing . . . or else make additional findings."

On March 13, 2024, the commissioner ordered a contested hearing and set it for April 3, 2024. In advance of the hearing, Fernandes filed a declaration informing the court that since the last hearing, the Mountaineers had "launched a new taskforce, policy committee, and online sexual harassment/sexual assault reporting tool." Fernandes did not submit any briefing about the constitutional issues identified by the revision court.

At the April 3 hearing, the commissioner again heard sworn testimony from the parties. Bobick reiterated that Fernandes "has repeatedly accused [him] publicly of sexual assault" and asserted that those accusations were defamatory. He also asserted that Fernandes "has offered no proof that her course of conduct

is protected free speech, exempt from the unlawful harassment statute" and that there was nothing in Fernandes's declaration "that makes a legal argument that her speech is exempt." Meanwhile, Fernandes testified that she had reviewed the revision court's order and stated, "I just wanted to clarify: I have never accused . . . Bobick of sexual assault. What I have said is that he was accused of sexual assault." Fernandes also argued, "[T]he legal definition of defamation would be that I have created something false in order to hurt [Bobick]," and, "I did what I did with a lawful motivation to help my community."

At the close of the hearing, the commissioner ruled, "based on the totality of the circumstances, that . . . there is a basis for a protection order in this matter . . . [a]nd . . . there is not an appropriate use of free speech by [Fernandes]." The commissioner thus entered a one-year protection order restraining Fernandes and protecting Bobick. In its order, the commissioner made the following finding, which was mandated by the revision court:

> [Bobick] supports [his] account of events with a sworn declaration that [Fernandes] made unproven accusations of sexual assault against [him] using his name and photograph for over 12 months. [Fernandes] agreed—or did not seriously dispute—[Bobick]'s description of her activities and time frame is accurate, and that [Bobick] has experienced substantial emotional distress.

The commissioner also made the following additional findings:

> This Court does NOT FIND (or not particularly relevant) persuasive [Fernandes]'s argument, as the Court understood it, that the Mountaineers changed their screening policies. . . . This Court FINDS the actions of [Fernandes] constituted harassment . . . and is not protected free speech. [Fernandes]'s actions may, *per her perspective*, constitute[ ] a legitimate purpose—this Court disagrees.

> This Court FINDS [Bobick] credible and established his burden by a

preponderance of the evidence.

(Boldface omitted.) Fernandes appeals.[1]

ANALYSIS

Fernandes asserts that the protection order must be vacated. We disagree. Fernandes does not establish that the trial court abused its discretion by determining that her activities did not constitute protected speech and met the definition of harassment.[2]

I. Standards for Reviewing Antiharassment Protection Orders

Chapter 7.105 RCW governs civil protection orders. Under RCW 7.105.225(1)(f), a court "shall issue a[n antiharassment] protection order if it finds by a preponderance of the evidence . . . that the petitioner has been subjected to unlawful harassment by the respondent." "Unlawful harassment" means, as relevant here, "[a] knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, harasses, or is detrimental to such person, and that serves no legitimate or lawful purpose." Former RCW 7.105.010(36)(a)

---

[1] Fernandes acknowledges that the protection order has expired and asserts that this appeal is not moot because we can still provide effective relief. Bobick does not argue otherwise, and we conclude that this appeal is not moot. Cf. Hough v. Stockbridge, 113 Wn. App. 532, 537, 54 P.3d 192 (2002) (holding that challenge to expired antiharassment protection order was not moot where petitioners sought to "cleanse their record of the continuing stigma of the antiharassment order" and presented issues of public importance).

[2] Fernandes raises only a "backward looking" constitutional argument that her complained-of activities were protected speech and, thus, could not properly serve as a basis for the protection order. She does not argue that the restraints imposed *going forward* are unconstitutional. Cf. Catlett v. Teel, 15 Wn. App. 2d 689, 705-08, 477 P.3d 50 (2020) (separately analyzing (1) whether restrained party's conduct constituted protected speech such that it did not meet the statutory definition of harassment and (2) whether restrictions imposed on the restrained party were unconstitutional content-based restrictions or unconstitutional prior restraints); In re Marriage of Suggs, 152 Wn.2d 74, 84, 93 P.3d 161 (2004) (holding that antiharassment protection order was an unconstitutional prior restraint where it was so lacking in specificity that the court was "unable to ascertain what speech the order actually prohibits"). Accordingly, we do not consider this issue.

(2022). "The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." Id. A "course of conduct" means "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose." Former RCW 7.105.010(6)(a) (2022). It "includes any form of communication, contact, or conduct, including the sending of an electronic communication." Id. In determining whether a course of conduct serves any legitimate or lawful purpose, a court should consider whether

> (i) Any current contact between the parties was initiated by the respondent only or was initiated by both parties;
> (ii) The respondent has been given clear notice that all further contact with the petitioner is unwanted;
> (iii) The respondent's course of conduct appears designed to alarm, annoy, or harass the petitioner;
> (iv) The respondent is acting pursuant to any statutory authority including, but not limited to, acts which are reasonably necessary to:
>> (A) Protect property or liberty interests;
>> (B) Enforce the law; or
>> (C) Meet specific statutory duties or requirements;
> (iv) The respondent's course of conduct has the purpose or effect of unreasonably interfering with the petitioner's privacy or the purpose or effect of creating an intimidating, hostile, or offensive living environment for the petitioner; or
> (vi) Contact by the respondent with the petitioner . . . has been limited in any manner by any previous court order.

Former RCW 7.105.010(6)(b) (2022). "Constitutionally protected activity is not included within the meaning of 'course of conduct.' " Former RCW 7.105.010(6)(a).

We review a trial court's decision whether to issue a protection order for abuse of discretion. In re Matter of K.G.T., 16 Wn. App. 2d 787, 791, 483 P.3d 808 (2021). "A trial court abuses its discretion if its decision is manifestly

7

unreasonable or based on untenable grounds." Culinary Ventures, Ltd v. Microsoft Corp., 26 Wn. App. 2d 396, 403, 527 P.3d 122 (2023). A trial court's decision is based on untenable grounds if it relies on facts that are not supported by the record. In re Welfare of M.R., 200 Wn.2d 363, 376, 518 P.3d 214 (2022). To that end, we review a trial court's factual findings for substantial evidence, generally deferring to the trier of fact "on the persuasiveness of the evidence, witness credibility, and conflicting testimony." In re Vulnerable Adult Petition for Knight, 178 Wn. App. 929, 936-37, 317 P.3d 1068 (2014). Evidence is substantial when sufficient to persuade a fair-minded person of the truth of the matter asserted. In re Marriage of Black, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017). Furthermore, "competent evidence sufficient to support the trial court's decision to grant . . . a petition for a . . . protection order may contain hearsay or be wholly documentary." Blackmon v. Blackmon, 155 Wn. App. 715, 722, 230 P.3d 233 (2010); see also ER 1101(c)(4) (evidence rules do not apply to protection order proceedings under ch. 7.105 RCW).

A trial court also abuses its discretion if it bases its ruling on an error of law. King v. Olympic Pipeline Co., 104 Wn. App. 338, 355, 16 P.3d 45 (2000). We review issues of law, including challenges invoking the right to free speech, de novo. Tyner v. State, 137 Wn. App. 545, 556, 154 P.3d 920 (2007).

II. Constitutionally Protected Activity

As noted, constitutionally protected activity is excepted from "course of conduct" and, thus, cannot be the basis for an antiharassment protection order. Former RCW 7.105.010(6)(a). Fernandes argues that her activities that were the

8

basis for the protection order were constitutionally protected, relying on Catlett v. Teel, 15 Wn. App. 2d 689, 477 P.3d 50 (2020).

In Catlett, the trial court entered an antiharassment protection order based on the restrained party's causing public records about the protected party to be published online. Id. at 698. The records at issue were obtained via public records requests and contained numerous police reports and court documents, the veracity of which was not disputed. Id. at 702, 705. We reversed based on United States Supreme Court precedent holding that publication of public records "enjoy[s] protection under the First Amendment." Id. at 702 (citing Florida Star v. B.J.F., 491 U.S. 524, 541 (1989); Cox Broad. Corp. v. Cohn, 420 U.S. 469, 495 (1975)). We also held that the publication of the records was protected under article I, section 5 of the Washington Constitution, which "guarantees an individual's right to publish accurate, lawfully obtained information that is a matter of public record." Catlett, 15 Wn. App. 2d at 704.

Here, unlike in Catlett, Fernandes did not merely publish public records about Bobick. Instead, the trial court found that Fernandes accused Bobick of sexual assault and did so repeatedly in online forums for a period of more than 12 months. Catlett is distinguishable and does not control.

Fernandes disagrees and asserts that her activities were like those of the restrained party in Catlett because she stated only that Bobick *had been accused of* sexual assault, which Bobick acknowledged was true. But the revision court found that Fernandes had actually *accused* Bobick of sexual assault. Similarly, the protection order includes findings that (1) Bobick supported his account of

events with a sworn declaration that Fernandes made unproven accusations of sexual assault against him for more than 12 months and (2) Bobick was credible. Critically, Fernandes does not assign error to these findings.[3] Unchallenged findings of fact are verities on appeal. In re Domestic Violence Protection Order for Timaeus, 34 Wn. App. 2d 670, 677, 574 P.3d 127 (2025).

Nevertheless, Fernandes asserts that in the context of this First Amendment challenge to the protection order, we must conduct an independent review of the record rather than defer to the trial court's factual findings. She is correct insofar as our review concerns " 'crucial' facts that necessarily involve the legal determination whether the speech is unprotected." State v. Kilburn, 151 Wn.2d 36, 52, 84 P.3d 1215 (2004). This includes, for example, the determination whether statements were true threats. Id. at 52. See also State v. TVI, Inc., 1 Wn.3d 118, 129-30, 524 P.3d 622 (2023) (appellate court conducts independent review of whether statements crossed the line from unprotected commercial speech to protected charitable solicitations). That said, " 'the constitutionally based rule of independent review' does not mean that we disregard credibility determinations of the trier of fact. Deference to factual determinations that turn on credibility assessment is essential because of the fact finder's unique opportunity to observe and weigh witness testimony." Duc Tan v.

---

[3] Fernandes did not designate the order granting revision in her notice of appeal; however, had she assigned error to the findings or conclusions therein, they would have been reviewable. See RAP 2.4(b) ("The appellate court will review a trial court order or ruling not designated in the notice . . . if (1) the order or ruling prejudicially affects the decision designated in the notice, and (2) the order is entered, or the ruling is made, before the appellate court accepts review."); see also Cox v. Kroger Co., 2 Wn. App. 2d 395, 407, 409 P.3d 1191 (2018) (order prejudicially affects the designated order if the designated order would not have occurred absent the earlier order and the issues in the two orders are so entwined that to resolve the designated order, the court must consider the earlier order).

Le, 177 Wn.2d 649, 670, 300 P.3d 356 (2013) (citations omitted) (quoting Bose Corp. v. Consumers Union of U.S., Inc., 466 U.S. 485, 499-500 (1984)). And here, Fernandes premises her First Amendment challenge on her claim that she stated only that Bobick had been *accused* of sexual assault. Thus, to the extent that our review concerns *the content of the statements*—i.e., what statements Fernandes made—we defer to the trier of fact because that determination turns on a credibility assessment.[4]

Finally, Fernandes asserts that the burden falls on Bobick to show that Fernandes's statements were false, relying on Seaquist v. Caldier, 8 Wn. App. 2d 556, 438 P.3d 606 (2019), for the proposition that she "never bore the burden of proving her speech was protected—that was . . . Bobick's responsibility." But Seaquist involved a defamation lawsuit, and we merely observed that it is the defamation plaintiff's burden to prove the elements of their claim. Id. at 564. Fernandes also relies on Reykdal v. Espinoza, but that case concerned application of a statute that allows a court to edit a political candidate's voter's pamphlet statement only if the court " 'concludes that the statement is untrue and that the petitioner has a very substantial likelihood of prevailing in a defamation action.' " 196 Wn.2d 458, 462-63, 473 P.3d 1221 (2020) (quoting RCW 29A.32.090(3)(b)); see also id. at 460 n.1 ("[O]ur decision rests on the proper

---

[4] As noted above, had Fernandes assigned error to the trial court's factual findings, we would review the findings for substantial evidence. In re Vulnerable Adult Petition for Knight, 178 Wn. App. 929, 936-37, 317 P.3d 1068 (2014). But not only did Fernandes not assign error to the factual findings, she did not designate for the appellate record the three video exhibits that the trial court considered. The appellant has the burden of providing an adequate record on appeal. Story v. Shelter Bay Co., 52 Wn. App. 334, 345, 760 P.2d 368 (1988). In any case, Bobick's testimony and declaration constitute substantial evidence supporting the finding that Fernandes claimed Bobick had actually perpetrated a sexual assault, not just that he was accused of doing so.

application of [RCW 29A.32.090], and thus there is no need to consider the constitutionality of the statute at this time."). That statute is not at issue here. Because Seaquist and Reykdal are inapposite and Fernandes cites no other authority for the proposition that Bobick was required to prove defamation to obtain an antiharassment protection order under ch. 7.105 RCW, Fernandes does not persuade us that reversal is required.

### III.  Sufficiency of the Evidence

Fernandes next argues that, First Amendment issues aside, the evidence was insufficient to support the protection order. But Fernandes premises her argument on her assertion that she "did not accuse . . . Bobick of sexual assault—she reported that he *had been accused of* sexual assault." (Emphasis added.) As discussed above, that underlying premise fails because the court's findings as to what statements Fernandes made are unchallenged on appeal.

Fernandes also asserts that her conduct was directed at the Mountaineers and not at Bobick. But the revision court expressly rejected this assertion below, finding that Fernandes's "accusation of sexual assault against . . . Bobick is directed specifically at . . . Bobick and the relevant conduct at issue in this case is directed specifically at him." Fernandes does not assign error to this finding, nor, as discussed above,[5] has she designated an adequate record to review it. Furthermore, her assertion asks us to the reweigh her evidence against the conflicting evidence, such as her own testimony that she was posting about Bobick "to let the community know that he is a perpetrator" because "he [wa]s still

---

[5] See supra n.4.

12

in [her] community." This we will not do. See Dave Johnson Ins., Inc. v. Wright, 167 Wn. App. 758, 778, 275 P.3d 339 (2012) ("When a trial court bases its findings of fact on conflicting evidence and there is substantial evidence to support the findings entered, we do not reweigh the evidence and substitute our judgment even though we might have resolved the factual dispute differently.").

Finally, Fernandes argues that "there had been no contact between [herself] and . . . Bobick," they were "complete strangers," there was "no allegation [that] Fernandes was stalking . . . Bobick or having others stalk him," and Bobick asserted, "without any evidence, that he was concerned for his safety." But she cites no authority for the proposition that harassment requires contact, familiarity, stalking, or instilling fear for another's safety. Again, Fernandes has not assigned error to the revision court's detailed findings as to each of the statutory elements of harassment and its determination that Fernandes's activities met those elements. Nor has she analyzed the statutory elements of harassment, articulated why the record was not sufficient to support a finding as to any element, or designated an adequate record to review the sufficiency of the evidence. She fails to establish that the trial court abused its discretion by finding that she committed unlawful harassment.

## IV. Fees on Appeal

Bobick requests an award of fees on appeal under RCW 7.105.310(1)(j), which authorizes a court "[i]n issuing any type of protection order" to "[r]equire the respondent to . . . reimburse the petitioner for costs incurred in bringing the action, including reasonable attorneys' fees." Fernandes argues that the statute

13

does not authorize an award of appellate fees where, as here, no fees were awarded below. Assuming, without deciding, that the statute authorizes an award of fees in this appeal, we exercise our discretion to deny Bobick's request for fees on appeal.

We affirm.

_Chung, J._

WE CONCUR:

_Díaz, J._    _Smith, J._